### PACIFIC HARDWARE & STEEL CO. v. MONICAL.

(Circuit Court of Appeals, Ninth Circuit.   May 5, 1913.)

No. 2,156.

1. NEGLIGENCE (§ 37*)—PRIVATE ROADWAY—USE BY PUBLIC—INVITEE.

Where an elevated roadway was constructed by the owner of the premises leading from a city street to a dock under permit from the city, and was intended for use by the public generally, and was continuously used thereafter by the public as a highway, plaintiff, while using the roadway on his own personal business at the time he was struck by the overhang of certain iron on defendant's auto truck, was not a trespasser, but an invitee, as to whom defendant's servant was bound to use reasonable care.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 52, 53; Dec. Dig. § 37.*]

2. NEGLIGENCE (§ 136*)—PRIVATE ROADWAY—USE—QUESTION FOR JURY.

Where a private roadway leading to a dock on a water front, and by which access to a boiler works plant was obtained, was also generally used by the public, defendant's chauffeur, in delivering iron to the boiler works by means of an auto truck over the roadway, was only entitled to use so much of it as was reasonably necessary in the employment in which he was engaged; and hence whether, in turning the truck into the boiler works, he carelessly occupied a greater space than was necessary, or his permission gave him, so as to bring the overhanging iron against plaintiff as he was using the highway as a pedestrian, and whether the chauffeur negligently occupied such excessive space, if any, without warning to plaintiff, or notice to others who might be on the roadway with equal right, was for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

3. NEGLIGENCE (§ 136*) — PRIVATE ROADWAY — USE — CONTRIBUTORY NEGLIGENCE.

Plaintiff, while standing on a private roadway, used generally by the public, leading to a dock, with his back to a passing auto truck loaded with steel angle irons, which extended 12 feet from the end of the truck, was struck and injured by the sweep of the iron as the truck was negligently turned at a high speed into an adjoining plant without warning. Plaintiff testified that he did not hear the truck approaching, and there was nothing to show that he had reason to believe that the driver would

turn from the roadway, or that he was in any danger. *Held* that, since plaintiff was entitled to assume that the driver of the truck would not negligently turn the same, so that the iron would strike plaintiff, he was not negligent as a matter of law in standing with his back toward the roadway, and in failing to exercise care to get out of the way.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the District Court of the United States for the District of Washington; Charles E. Wolverton, Judge.

Action by Alonzo L. Monical against the Pacific Hardware & Steel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The injuries complained of occurred on the 25th day of March, 1911, and were caused by the plaintiff being struck by bars of iron or steel, known as angle iron, which protruded from the rear end of an auto truck owned and operated by the defendant.

The complaint alleged that on the day mentioned the plaintiff was standing against a wooden railing on the north side of an elevated roadway leading from Water street to Supple's dock, situate on the east side of the Willamette river in the city of Portland, Or.; that while the plaintiff was so standing, and while he was engaged in talking to one Capt. Nelson, the defendant, by its servant, Harry Kelly, carelessly and negligently operated and ran an auto truck along the roadway from Water street in the direction of Supple's dock; that the auto truck was loaded with several bars of steel or iron, known as angle iron; that these bars were about 30 feet in length, and extended and protruded behind and beyond the rear end of the auto truck a distance of about 16 feet; that, when passing the plaintiff, the defendant, by its servant, carelessly and negligently omitted to ring a bell, blow a horn or whistle, or sound a gong, and, without giving any signal or warning, carelessly and negligently operated and turned said auto truck toward the southerly portion or side of the roadway at a highly dangerous and unsafe rate of speed, with the intention of passing through a certain gateway or opening on the south side of the roadway, known as the entrance to the premises of the East Side Boiler Works; that the gateway or opening was about 16 feet in width; that the east side of the gateway or opening was on a line about 22 feet west of the point where plaintiff was standing; that the defendant, by its servant, while so operating and running its auto truck, without any fault or negligence on the part of the plaintiff, carelessly and negligently struck the plaintiff with the protruding angle iron in a violent manner, and knocked him through the railing against which he was leaning, and down upon several logs lying a distance of about 20 feet below said elevated roadway, by reason of which the plaintiff sustained the injuries particularly set forth in the complaint.

An amendment to the complaint alleged that at the time the injuries were received, and for several years preceding that time, the roadway in question had been and was being used by the public generally as a roadway for vehicles and pedestrians to pass and repass from East Water street to the wharves and docks known as Supple's dock, and the wharf and premises of a corporation known as the Willamette & Columbia River Towing Company; that the roadway was constructed upon a public street of the city of Portland, known as East Yamhill street, and was a public roadway of the city of Portland; that the plaintiff, for several years immediately preceding the time of the accident, had been in the habit of using the roadway, and was at the time of receiving the injuries using the same, by the invitation and permission of the city of Portland and of Joseph Supple and of the Willamette & Columbia River Towing Company, the owners of said docks, wharves, and premises; and that the plaintiff was rightfully there at the time of the accident.

It appeared by the answer filed by the defendant that the East Side Boiler Works (to whom said angle iron was about to be delivered by the defendant at the time of the accident) was the lessee of the Willamette & Columbia River Towing Company; that that company was the owner of the property occupied by the boiler works and claimed the land under the roadway. The answer also alleged that the roadway was, at the time of the accident, a private roadway of the Willamette & Columbia River Towing Company and of Mr. Joseph Supple; that the last-named parties had constructed and built the same; that the East Side Boiler Works had given the defendant license to drive and operate its auto truck along the roadway and into the opening to its plant for the purpose of delivering to it the angle iron with which the auto truck was loaded; that the plaintiff was, at the time of the accident, a trespasser upon the private roadway; that the plaintiff voluntarily and negligently trespassed upon, and placed himself and remained at a point on the north edge of, the roadway which he knew to be a highly dangerous position, and then and there failed to exercise reasonable and ordinary care for his safety; that because of his own negligence in trespassing upon that portion of the private roadway, and in voluntarily and negligently placing himself in a dangerous position, and in failing to exercise reasonable and ordinary care for his safety, he received the injuries complained of; that the accident happened by reason of the negligence and want of care of the plaintiff, and without any negligence on the part of the defendant or its servant.

At the close of plaintiff's testimony the defendant moved for a nonsuit on two grounds: (1) That the premises or roadway on which the accident occurred was private property, that the plaintiff was on the premises or roadway merely as an implied licensee, and that there was no testimony in the case showing the existence of any wanton or willful neglect on the part of the defendant's servant in causing the accident. (2) That the plaintiff, at the time of the accident, was guilty of contributory negligence. The motion for a nonsuit was overruled.

At the close of the case the defendant moved the court to direct a verdict in its favor. The motion for a directed verdict was based upon the grounds previously urged in support of the motion for a nonsuit. The motion for a directed verdict was overruled.

In addition to the overruling of the motion for a nonsuit, and of the motion for a directed verdict, there is also assigned as a third error the action of the court in refusing to give to the jury the following instruction, requested by the defendant: "You are instructed that the roadway leading from East Water street, upon which this accident took place, is, under the testimony, a private roadway. You are further instructed from the evidence that the plaintiff, at the time of the accident, was upon said private roadway upon his own personal business. You are further instructed that the defendant's servant, Harry Kelly, was upon said private roadway as an invited person, pursuant to contractual relations between the defendant and the East Side Boiler Works, a tenant of the owners of said private roadway. You are further instructed that, under such circumstances, the defendant is not liable in damages for the injuries complained of, unless its servant, Harry Kelly, was guilty of willful or wanton negligence towards the plaintiff. You are further instructed that, the complaint not charging that the defendant's servant was guilty of wanton or willful negligence, the plaintiff cannot recover in this action, and your verdict must be for the defendant."

The fourth assignment of error alleges: "That the court erred in, after instructing the jury that the premises upon which said accident took place was private property, instructing them that they should consider as a matter of fact to what extent the public were allowed to use it, and if they found that the public were allowed to use it, without objection on the part of the owners thereof, then the defendant's servant was liable to the plaintiff, if in the use of it made by the defendant's servant he did not exercise ordinary care to avoid injury to the plaintiff."

The jury returned a verdict in favor of the plaintiff in the sum of $8,000.

Platt & Platt and Palmer L. Fales, all of Portland, Or., for plaintiff in error.

Henry St. Rayner, of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). Counsel for the plaintiff insists that the defendant waived any supposed error of the court in denying its motion for a nonsuit by proceeding to introduce testimony in its own behalf after the motion had been denied, and that the defendant is precluded from assigning that ruling as error. But inasmuch as the motion of the defendant for a directed verdict, which was also overruled, was based upon the identical grounds set forth in the motion for a nonsuit, we deem it unnecessary to consider this question.

[1] During the trial of this case, testimony was introduced by the plaintiff in support of the fact that the roadway in question, although built by private persons for private purposes, was, at the time of the accident and for several years immediately prior thereto, used by the public generally as a public highway. Joseph Supple, the owner of the premises known as the "Supple Dock," testified that in conjunction with the Willamette & Columbia River Towing Company he had built the roadway in 1906 under a permit obtained from the city of Portland; that it was constructed for the use of the public and for their own use; that it had been used by the public generally as a public highway from the time of its construction. These facts were fully corroborated by the testimony of Capt. Jones, the secretary and treasurer of the Willamette & Columbia River Towing Company. He stated that since the time of the construction of the roadway the public had used it, and had never been excluded from it, that everybody who wanted to use it was privileged to do so, that there was no sign stating that it was a private road, and that none had ever been placed there.

The plaintiff testified that he had been in the habit of passing over the roadway ever since it was constructed; that there was no gateway to it; that the whole length of it had been used by vehicles and pedestrians generally since the time of its construction four years before. The testimony of several other witnesses tended to establish the fact that the roadway had been used by the public generally for any and all purposes.

But it is insisted by the defendant that the auto truck operated by its servant was on the roadway pursuant to contractual relations between the defendant and the East Side Boiler Works, a tenant of the owners of the roadway; that the plaintiff was on the roadway on his own personal business, and was what is known in the law as an "implied licensee"; that, this being true, the plaintiff could not recover, unless the defendant had been guilty of wanton and willful negligence. This defense is a misapprehension of the real issue of fact in the case.

In the case of Commonwealth Electric Co. v. Melville, 210 Ill. 70, 70 N. E. 1052, the defendant labored under a similar misapprehension as to the real issue in the case. In that case an electric company,

acting under authority of a city ordinance, placed an electric cable beneath a sidewalk, and, while the sidewalk was several feet above the surface of the ground, there was, owing to the curbing, no access from the street to the space under the sidewalk; but there was access to such space from an abutting lot, the rear of which opened into an alley. Fire broke out under the sidewalk, owing to the grounding of the electric current, and the plaintiff, a boy, went under the sidewalk from the lot, and was injured by coming accidentally in contact with the cable, which was insufficiently insulated. It appeared that boys were in the habit of playing on the lot and going under the sidewalk, without objection from the lot owner or the city. The court said:

"It is earnestly insisted on the part of the electric company that the relation of the plaintiff to the defendant was that of trespasser or licensee, and that consequently the defendant was not liable unless the injury to the plaintiff resulted from some willful or wanton act of the defendant. We think this a misapprehension. The only right the electric company had under the ordinance was a right to place its wires under the sidewalk. It was entitled to permanently occupy no more space for that purpose than was necessary for the wire and any devices used to protect the wire and to keep persons from coming in contact therewith. It had no right or permission to occupy the whole of the space under the sidewalk where the accident occurred. It appears that there was nothing to prevent access from the alley in the rear to the lot fronting on this space; that boys were in the habit of playing on that lot and passing into this space under the sidewalk to shelter themselves from rain or sun, or for any other purpose that occurred to them; and that this was done without objection from the owner of the lot or the city. * * * Plaintiff was therefore rightfully in this space, and he was not there by the leave or license of the defendant. The same rule does not apply to him as applies to one who goes upon the property of another, whether with or without permission. He was not upon property either owned or controlled by the defendant."

[2] So the defendant's servant in this case had no right or permission to occupy all the roadway running from Water street to the water front, nor even all the space of the roadway in front of the East Side Boiler Works. What he had permission to do was to occupy the necessary space to drive his auto truck upon this roadway in order to deliver his load of angle irons to the Boiler Works. He had no right to this roadway in excess of this permission. His right was limited to the reasonable and necessary employment in which he was engaged, and the question for the jury was whether, in turning the auto truck into the Boiler Works, he carelessly occupied a greater space than his employment required, or his permission gave him, and whether he did so without warning or notice to others who might be on the roadway with equal right.

The plaintiff at the time of the accident was on this roadway as a footman. He was not on property either owned or controlled by the defendant. The evidence tended to show that he had a right to be on this roadway in the capacity of a footman, first, by reason of his right to go to a warehouse situate on the dock, for the purpose of getting some clothing out of a trunk he had left there; and, second, because the roadway was to that extent at least a public roadway. Whether the plaintiff had a right to be on this roadway under either or both of these supposed rights were questions for the jury. The

motions of the defendant for a nonsuit and for a directed verdict were therefore properly overruled.

[3] The only question remaining to be considered is: Was the plaintiff, under the facts in this case, guilty of contributory negligence as a matter of law? In considering this question it must be remembered that the auto truck of the defendant was but 19 feet long, and that the bars of iron or steel with which it was loaded were about 31 feet long. They extended out behind and beyond the rear end of the truck a distance of about 12 feet. The manner in which the auto truck was loaded was therefore a dangerous one, and the danger to pedestrians from an auto truck loaded in this manner was greatly increased at such times as the auto truck might turn from one street or roadway into another, or into a building. In view of the dangerous manner in which the auto truck of the defendant was loaded, and of the fact that this danger was increased at such times as the auto truck might turn from one street or roadway into another, or into a building, it was undoubtedly incumbent upon the driver thereof to exercise at least ordinary care at such times.

But the testimony in this case showed conclusively that the driver of the auto truck failed to exercise even ordinary care in attempting to turn from the roadway in question into the entrance to the Boiler Works. He testified during the trial of the case that prior to reaching the entrance to the Boiler Works he saw some one walking towards him, that he then dropped his eyes to the roadway and paid no more attention to him, and that when he got opposite the entrance to the Boiler Works he swung in. The evidence is equally conclusive that the auto truck was being driven at a dangerous rate of speed. Three witnesses who were very close to the scene at the time of the accident testified that the auto truck was being driven at the rate of from 10 to 15 miles an hour, and that the rate of speed was not lessened when the driver attempted to pass into the entrance to the Boiler Works. The plaintiff testified that he heard no warning, and the testimony established the fact that neither when approaching the entrance to the Boiler Works, nor when about to turn in thereat, was there any whistle, horn, bell, or warning of any kind sounded by the driver. There were some planks or timbers, 4 inches thick, 12 inches wide, and about 22 feet long, piled on the north side of the roadway near the point where the plaintiff was standing at the time of the accident. This pile of timbers or planks was about 5 feet high. After striking the plaintiff and knocking him off the roadway, the ends of the angle iron struck the pile of timbers or planks, hitting one of them so hard that it also was almost knocked off the roadway. Concerning this the driver testified that he saw the pile of timbers or planks on the north side of the roadway as he was driving towards it, but did not expect to hit it; that when the angle iron swung around it reached clear to the railing, struck the planks, and knocked one of them halfway over the railing. He also testified that he had delivered merchandise of this character to the Boiler Works several times before, but had at no former time broken the railing.

Thus it was conclusively made to appear that, had the driver of the auto truck exercised the degree of care which he had exercised on

former occasions, the plaintiff would not have been injured. Having in mind this evidence tending to show negligence and want of ordinary care on the part of the defendant's servant, it is difficult to conceive of any act of the plaintiff which could have amounted to contributory negligence on his part. He was not warned of his danger, and the evidence does not tend to show that he should have apprehended the danger.

But it is insisted by the defendant that the plaintiff failed to exercise reasonable and ordinary care, and that he was guilty of contributory negligence, by reason of the fact that, at the time he was struck with the ends of the angle iron, he was standing with his back towards the roadway along which the auto truck of the defendant was proceeding. It must be remembered, however, that the auto truck itself had passed the plaintiff at the time he was injured, and therefore, so far as the auto truck proper was concerned, he had not failed to exercise reasonable and ordinary care. The plaintiff testified that he did not hear the auto truck approaching; but, conceding that he did hear it approaching, and that he heard it pass him, and even conceding that there was a duty resting upon the plaintiff to acquaint himself with the unusual manner in which the truck was loaded, still, in the absence of any signal or warning, he could not have known that it was the intention of the driver of the auto truck to turn from the roadway along which he was proceeding and into the roadway leading to the Boiler Works.

We are of the opinion that, under the facts in this case, it cannot be claimed that the plaintiff was guilty of contributory negligence, as matter of law, and that no question in that regard was presented for the consideration of the jury. The plaintiff was ignorant of the circumstance requiring the use of special care, and hence was relieved of necessity of showing that he used special care. The rule is well settled that a person has a right to assume that persons with whom he is thrown in contact will act with due care, and it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant. Boyce v. Manhattan Ry. Co., 118 N. Y. 314, 23 N. E. 304; New York, L. E. & W. R. Co. v. Atlantic Refining Co., 129 N. Y. 597, 29 N. E. 829.

We think that the evidence required the submission of the case to the jury for their determination, under all the circumstances, whether the plaintiff was guilty of contributory negligence, and that the action of the court below in overruling the motions of the defendant for a nonsuit and for a directed verdict was without error.

The judgment of the court below is affirmed.